UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SHERHONDA GOLDEN,

                                            Plaintiff,

                    -v-

NBCUNIVERSAL MEDIA, LLC,

                                            Defendant.

---

22 Civ. 9858 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

Plaintiff Sherhonda Golden ("Golden") brings this putative class action against NBCUniversal Media, LLC ("NBCU") alleging violations of the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA" or the "Act"), and unjust enrichment.  Golden alleges that NBCU knowingly discloses to Meta Platforms, Inc. ("Facebook")—the parent company of popular social media service Facebook—data containing Golden and other digital visitors' personally identifiable information ("PII") and information about their on-demand video consumption without their consent.

NBCU has moved to dismiss Golden's First Amended Complaint ("FAC") in its entirety. For the following reasons, the Court grants defendant's motion, but grants Golden leave to amend for the limited purpose of pleading in greater detail the operation of Today.com's email newsletter and mobile application ("app") services.

I.    **Background**

    A.    **Factual Background**[1]

        1.    **Today.com's Website and Newsletter**

NBCU owns and operates Today.com, Dkt. 14 ("FAC") ¶ 1, a website in the U.S. that is accessible from a desktop computer or a mobile app, *id.* ¶ 24.  Today.com offers both live, *id.* ¶ 21, and on-demand, *id.* ¶ 44, video content.  The website allows users to "sign up" for one or more email newsletters.  *Id.* ¶¶ 21, 22, 24.  The Court infers from a screenshot in the FAC that the newsletters contained curated lists of links to Today.com content discussing certain news and popular culture topics.  *Id.* ¶¶ 22 (newsletters available for specific subjects, such as "TODAY Food" or "TODAY Parents"), 51; *see id.* ¶ 21 (splash page encouraging users to sign up for "daily, morning newsletter" to "[g]et the latest in news, pop culture, wellness and more in your inbox" and depicting a live video feed of Today.com's "Popstart Plus" content).  The FAC, however, does not allege any details as to the emailed newsletters, such as their format or frequency.  It also does not allege that signing up to receive newsletters provides users with access to more or different content than users who do not sign up for a newsletter,[2] or that users had to pay for access to such newsletters.

---

[1] The following facts are drawn primarily from the First Amended Complaint.  *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.").  For the purpose of resolving the motion to dismiss under Rule 12(b)(6), the Court presumes all well-pled facts to be true and draws all reasonable inferences in favor of plaintiff.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

[2] The FAC generically alleges: "After becoming a digital newsletter subscriber, viewers have access to a variety of Today.com video content on NBCU's digital platforms."  FAC ¶ 28.  It nowhere alleges, nor did Golden claim in responding to NBCU's motion to dismiss, *see* Dkt. 16 ("Mem.") at 16–17, that any such content was exclusive to newsletter recipients.  *See also* Dkt. 22 at 5.

Users may sign up to receive newsletters by providing their name, email address, and zip code.  *Id.* ¶ 23; *see also id.* ¶¶ 21–22.  Newsletter recipients provide NBCU with their internet protocol ("IP") address, a unique number assigned to all information technology connected devices, which conveys the device's city, zip code, and physical location to NBCU.  *Id.* ¶ 25.

Today.com's then-operative privacy policy states that it automatically collects certain information—including "content you view and duration."[3]  *Id.* ¶ 31.  It does not, however, tell newsletter recipients that it shares that information with third parties, including Facebook.  *Id.* ¶¶ 31–32; *see also id.* ¶ 27 (no disclosure when signing up for newsletter).

Today.com installed Facebook's tracking pixel ("Facebook Pixel") to transmit certain information about users to Facebook, which Facebook then uses to show users targeted ads.  *Id.* ¶¶ 33, 35.  The Facebook Pixel tracks users' actions on Facebook advertisers' websites and reports them to Facebook.  *Id.* ¶¶ 34–35.  To obtain the code for the Facebook Pixel, the website advertiser informs Facebook which website events it wishes to track (for example, video media).  Facebook, in turn, generates corresponding pixel code for the advertiser to include in the code of its website.  *Id.* ¶ 34.  Specifically, when a digital newsletter recipient watches video content, Today.com transmits to Facebook a cookie[4] with the video content name, the URL of the prerecorded video that was viewed, and, for visitors with an active and logged in Facebook account, the viewer's Facebook identification number ("FID" or "Facebook ID").  *Id.* ¶¶ 35, 42.

_____

[3] Golden alleges that NBCU has updated its privacy policy during the pendency of her suit.  FAC ¶ 31 n.2.

[4] A cookie is "a small file or part of a file stored on a World Wide Web user's computer, created and subsequently read by a website server, and containing personal information (such as a user identification code, customized preferences, or a record of pages visited)."  *Cookie*, MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/cookie (last visited Aug. 16, 2023).

A FID is a unique and persistent sequence of digits that Facebook assigns to each user's account. *Id.* ¶ 38.  Anyone can use a FID to look up a Facebook profile, which "typically contains a wide range of demographic and other information about the user."  *Id.* ¶ 39; *see also id.* ¶ 6.

When installing the Facebook pixel, "developers and marketers can optionally choose to send additional information about the visit through Custom Data events."  *Id.* ¶ 37 (alterations and emphasis omitted).  The FAC alleges that NBCU programmed the pixel to transmit to Facebook information about users' video viewing.  *See id.* ¶¶ 38 (NBCU declined to program website or app so as not to transmit video viewing information), 73 (NBCU programmed pixel so that Facebook received video content name, URL, and users FID).  The pixel transmits users' information without their consent or knowledge.  *Id.* ¶ 39.  NBCU benefits financially from providing this information to Facebook.  *Id.* ¶ 35.

### 2.    Golden's Experience

In 2022, Golden signed up to receive a Today.com newsletter.  *Id.* ¶ 51.  She has since received emails and other communications from Today.com.  *Id.* ¶¶ 13, 51.

Golden accesses Today.com's content through its website and mobile app.  *Id.* ¶ 52.  She has also had a Facebook account from approximately 2012.  *Id.*

During the relevant period, Golden used her Today.com subscription to view on-demand video media through Today.com or its mobile app while concurrently logged into her Facebook account.  *Id.* ¶ 13.  Golden never agreed, authorized, or otherwise consented to NBCU's disclosure of her personal video viewing information to Facebook, and has not been given written notice stating that it is NBCU's practice to do so.  *Id.* ¶ 53.

B.       **Procedural History**

On November 18, 2022, Golden filed her initial complaint. Dkt. 1. On January 27, 2023, NBCU moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Dkt. 8. On January 30, 2023, the Court directed Golden to file an amended complaint or oppose NBCU's motion by February 17, 2023, and that no further opportunities to amend would ordinarily be granted. Dkt. 13.

On February 17, 2023, Golden filed the FAC, on behalf of a putative class, alleging VPPA and unjust enrichment claims. Dkt. 14. On March 10, 2023, NBCU moved to dismiss the FAC, Dkt. 15, and filed a memorandum of law, Dkt. 16 ("Mem."), and declaration, Dkt. 17, in support. On April 7, 2023, Golden opposed. Dkt. 21 ("Opp."). On April 21, 2023, NBCU replied. Dkt. 22 ("Reply"). In the intervening months, the parties filed multiple letters alerting the Court to, and debating the merits of, supplemental authority. *See* Dkts. 23, 25–27, 29–31.

## II.      Applicable Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. When resolving a motion to dismiss, the Court must assume all well-pled facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012); *see also A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993) ("[A]ll allegations are construed in

the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor,

notwithstanding a controverting presentation by the moving party.").  That tenet, however, does

not apply to legal conclusions.  *See Iqbal*, 556 U.S. at 678.  Pleadings that offer only "labels and

conclusions" or "a formulaic recitation of the elements of a cause of action will not do."

*Twombly*, 550 U.S. at 555.

## III.    Discussion

NBCU moves to dismiss both counts.  It argues that the FAC fails to allege the requisite

elements of a VPPA claim—namely that (1) Today.com was a video tape service provider,

which (2) knowingly (3) disclosed Golden's personally identifiable information, and that

(4) Golden is a Today.com subscriber.  *See* Mem. at 7–21; Reply at 2–9.  It argues that the unjust

enrichment claim is duplicative of the VPPA claim.  Mem. at 21–22.  Golden disagrees as to

both counts.  Opp. at 4–13.  The Court addresses the claims in turn.

### A.    Golden's Video Privacy Protection Act Claim

The VPPA was enacted in 1988, after a newspaper published a profile based on Supreme

Court nominee Judge Robert Bork's video rental history.  *See Carter v. Scripps Networks, LLC*,

No. 22 Civ. 2031 (PKC), 2023 WL 3061858, at *4 (S.D.N.Y. Apr. 24, 2023) (citing S. Rep. No.

100-599, at 5 (1988)).  It provides that "[a] video tape service provider who knowingly discloses,

to any person, personally identifiable information concerning any consumer of such provider

shall be liable to the aggrieved person[]."  18 U.S.C. § 2710(b)(1); *cf. In re Nickelodeon*

*Consumer Priv. Litig.*, 827 F.3d 262, 278 (3d Cir. 2016) (VPPA provides a private cause of

action).  The Act defines the following terms relevant here:

> (1) "consumer" means any renter, purchaser, or subscriber of goods or services
> from a video tape service provider; . . . .
> (3) "personally identifiable information" includes information which identifies a
> person as having requested or obtained specific video materials or services from a
> video tape service provider; and

> (4) "video tape service provider" means any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials . . . .

18 U.S.C. § 2710(a).  In 2013, Congress amended the pre-Internet VPPA to—in the words of amendment sponsor Rep. Bob Goodlatte—"reflect the realities of the 21st century," but it did not alter any of the VPPA's substantive definitions.[5]  158 CONG. REC. H6849-01 (daily ed. Dec. 18, 2012); *see Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1253 (11th Cir. 2015) (quoting same).

### 1.    Was Today.com a Video Tape Service Provider?

NBUC argues that, on the facts alleged, Today.com is not a "video tape service provider"—because its on-demand "morning shows featuring news and entertainment" are not within the VPPA's scope, Mem. at 19–20, and because live as opposed to on-demand video content is a "main feature" of its online video offerings, *id.* at 19.  Both arguments are easily put aside.

NBCU is wrong "that the content on Today.com is outside the statute's intended reach." Reply at 8.  The VPPA defines a video tape service provider as one "engaged in the business" of "delivery of prerecorded video cassette tapes or similar audio visual materials."  18 U.S.C. § 2710(a)(4).  This text is unambiguous; no party argues otherwise.  *See Fed. Hous. Fin. Agency v. UBS Americas Inc.*, 712 F.3d 136, 141 (2d Cir. 2013) ("In construing a statute, we begin with the plain language, giving all undefined terms their ordinary meaning," and "[a]bsent ambiguity,

---

[5] The amendment, introduced in 2012 and enacted in 2013, was limited in scope.  *See* Video Privacy Protection Act Amendments Act of 2012, 126 Stat. 2414, Pub. L. 112-258 (2013).  It "clarif[ied] that a video tape service provider may obtain a consumer's informed, written consent on an ongoing basis and that consent may be obtained through the internet," *id.*, but it did not otherwise alter the VPPA as enacted in 1988.  *See Ellis*, 803 F.3d at 1253; 158 CONG. REC. H6849-01 (daily ed. Dec. 18, 2012) (Goodlatte: amendment "does not change the scope of who is covered by the VPPA or the definition of 'personally identifiable information'").

our analysis also ends with the statutory language.")  It looks to a video's format, rather than its

subject matter or the provider's identity.

Here, as alleged, Today.com allowed users to view on-demand, pre-recorded audio-visual

materials through its website and app, *see, e.g.*, FAC ¶¶ 44–45; such was part of Today.com's

business model, *id.* ¶¶ 35, 38 (Today.com sells users' video-viewing information to advertisers).

As such, Today.com comes within the VPPA's definition of a video tape service provider.  *See,*

*e.g.*, *Sellers v. Bleacher Rep., Inc.*, No. 23 Civ. 00368 (SI), 2023 WL 4850180, at *6 (N.D. Cal.

July 28, 2023) (collecting cases in which courts have held "that websites that provide video

content as well as other media content—including news organizations—are video tape service

providers under the VPPA."); *Ambrose v. Bos. Globe Media Partners LLC*, No. 21 Civ. 10810

(RGS), 2022 WL 4329373, at *2 (D. Mass. Sept. 19, 2022) (applying VPPA to *The Boston*

*Globe*); *see also Lebakken v. WebMD, LLC*, No. 22 Civ. 644 (TWT), 2022 WL 16716151, at *3

n.2 (N.D. Ga. Nov. 4, 2022) ("WebMD is a video tape service provider because [plaintiff]

alleges that WebMD is engaged in the business of delivering prerecorded audio-visual materials

to consumers via its e-newsletter and its website.").[6]  To the extent NBCU factually disputes the

---

[6] NBCU does not cite any case holding otherwise.  It relies instead on its abridgement of a line in
a brief the United States filed as an interested party in a case in which it defended the VPPA
against a First Amendment overbreadth challenge.  *See* Mem. at 19 (citing *Stark v. Patreon, Inc.*,
No. 22 Civ. 3131 (JCS), Dkt. 49-1 at 18 (N.D. Cal. Dec. 5, 2022)).  The United States there
stated: "[T]he VPPA does not impose liability on any entity other than a 'video tape service
provider' for revealing," as edited by NBCU, "[PII]."  *Id*.  That statement does not assist NBCU
here.  NBCU's motion to dismiss does not make an overbreadth or other First Amendment
argument.  *See* Reply at 8.  And, read in full, the United States's amicus brief in *Stark* does not
support NBCU's claim that news organizations are beyond the VPPA's scope where their
offerings, as pled, meet the VPPA's description of a "video tape service provider."  The United
States's brief, read in full, merely stated that the VPPA does not impose "liability on any entity
*other than* a 'video tape service provider' for revealing *such* information."  *Stark*, No. 22 Civ.
3131 (JCS), Dkt. 49-1 at 18 (emphasis added).  The "information" to which the United States
referred, as the preceding sentences in its brief clarify, was "information of significance to the

FAC's averments as to Today.com's operation and business model, that argument is premature on a motion to dismiss stage. *See Sellers*, 2023 WL 4850180, at *6 (defendant was properly pled as video tape service provider, notwithstanding that it disputed the pleading's description of its business model).

NBCU also contends that, because Today.com provides—in addition to on-demand content—live video content, it is not a video tape service provider. That too is unpersuasive. NBCU relies on two decisions holding that the VPPA does not apply to live video content. *See* Mem. at 19 (citing *Stark v. Patreon, Inc.*, 635 F. Supp. 3d 841, 851 (N.D. Cal. 2022), and *Louth v. NFL Enters. LLC*, No. 21 Civ. 00405 (MSM) (PAS), 2022 WL 4130866, at *4 (D.R.I. Sept. 12, 2022) (dismissing claim premised only on disclosure of PII while plaintiff viewed live content)). But those decisions are inapposite, because the FAC's VPPA claim is not based on Today.com's live video content, but instead, exclusively, on its on-demand—that is, pre-recorded—video content. *See, e.g.*, FAC at 1 (defining "Video Media" as "pre-recorded video"); *id.* ¶¶ 1, 13 (alleging that Golden used her subscription to view such content); *see also* Opp. at 9 ("Plaintiff … has not alleged[] that this matter covers lives streams."); *cf., e.g.*, *Czarnionka v. Epoch Times Ass'n, Inc.*, No. 22 Civ. 6348 (AKH), 2022 WL 17069810, at *4 (S.D.N.Y. Nov. 17, 2022) (inferring, where complaint did not allege whether content was prerecorded, that plaintiff consumed prerecorded content, rather than live content), *motion to certify appeal denied*, 2022 WL 17718689 (S.D.N.Y. Dec. 15, 2022). The VPPA's text does not provide—and NBCU has not identified any case holding—that where an entity happens to also provide live content, its on-demand content falls outside the VPPA's scope.

---

public, such as a public officials' video rental history demonstrating that he or she has taken hypocritical positions on important issues." *Id.*

Accordingly, the FAC adequately alleges that Today.com is a video tape service provider within the VPPA.

### 2.    Did Today.com Disclose Golden's Personally Identifiable Information?

NBCU next argues that the FAC does not adequately plead that Today.com discloses personally identifiable information ("PII") within the meaning of the VPPA.  *See* Mem. at 7–13. The VPPA defines PII as "information which *identifies a person* as having requested or obtained *specific video materials* or services."  18 U.S.C. § 2710(a)(3) (emphasis added).  Courts have interpreted this to require that a video tape service provider have disclosed information that "at the very least, identif[ies] a *particular* person—not just an anonymous individual—and connect[s] this particular person with his or her viewing history."  *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 179 (S.D.N.Y. 2015) (emphasis in original); *see In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015) ("There are, in other words, three distinct elements [in the VPPA's definition]: the consumer's identity; the video material's identity; and the connection between them."); *see also Austin-Spearman v. AMC Network Ent. LLC*, 98 F. Supp. 3d 662, 670 n.4 (S.D.N.Y. 2015) (discussing *In re Hulu*).  NBCU argues that the FAC does not allege that Today.com disclosed Golden's identity or specific video material.

That argument fails.  Salient here, the FAC alleges that—because of NBCU's installation of the Facebook pixel, FAC ¶¶ 34–35—when a Today.com user watches on-demand video on Today.com, "the website sends to Facebook . . . a single transmission" containing "the video content name, the URL of the pre-recorded video that was viewed (which clearly identified the video content being watched) along with, . . . the viewer['s] Facebook ID that uniquely identifies the user," *id.* ¶ 35; *see id.* ¶ 45.  It alleges that the viewer's information is not anonymized.  *Id.* ¶ 42.  Rather, although this information is transmitted via a cookie, *id.* ¶ 45 (Facebook ID in

"c_user" field), "Facebook—or any other ordinary person—can use [a FID] to quickly and easily locate, access, and view a [person's] corresponding Facebook profile," *id.* ¶ 6; *see id.* ¶ 38 ("A FID is a unique and persistent identifier" with which "any[] ordinary person can look up the user's Facebook profile and name."). As to Golden specifically, the FAC alleges that she was logged into her Facebook account when she viewed Today.com on-demand video media and that her PII was disclosed to Facebook through the process described above. *Id.* ¶ 13.

These allegations—to the effect that a Facebook ID that could be used to identify Golden, herself, was disclosed—suffice. Under the VPPA, PII "include[s] more information than that which, by itself, identifies an individual as having watched certain videos." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 984 (9th Cir. 2017); *see, e.g.*, *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 486 (1st Cir. 2016) ("[T]he [VPPA's] language reasonably conveys the point that PII is not limited to information that explicitly names a person."); *cf. Wilson v. Triller, Inc.*, 598 F. Supp. 3d 82, 90 (S.D.N.Y. 2022) (same). It "covers some information that *can be used* to identify an individual," even it does not do so directly. *Eichenberger*, 876 F.3d at 984 (emphasis in original); *Wilson*, 598 F. Supp. 3d at 90. (same).

To be sure, as courts have recognized, the VPPA does not precisely delineate "the scope of information encompassed by PII and how, precisely, this information must identify a person."[7] *Robinson*, 152 F. Supp. 3d at 180. Among the courts to analyze this question, "two approaches have emerged." *Wilson*, 598 F. Supp. 3d at 91. Under the broader approach, adopted

---

[7] S*ee Eichenberger*, 876 F.3d at 984 ("The question remains, though: Under the VPPA, what information did Congress intend to cover as 'capable of' identifying an individual?"); *In re Nickelodeon*, 827 F.3d at 281, 284 ("[W]hat counts as personally identifiable information under the Act is not entirely clear" and "norms about what ought to be treated as private information on the Internet are both constantly in flux and often depend on the novelty of the technology at issue."); *Wilson*, 598 F. Supp. 3d at 91 (same).

by the First Circuit, PII encompasses "information reasonably and foreseeably likely to reveal which [] videos [a person] has obtained" to the third party to whom the PII is disclosed. *Yershov*, 820 F.3d at 486. The First Circuit has thus held that the disclosure of a device's GPS coordinates at the time the video was viewed, and device-specific identifiers, was a PII disclosure where the recipient had software to link that information to a specific person's name, phone number, and address. *Id.* Under the narrower approach, adopted by the Third Circuit, PII requires more: the disclosure of "the kind of information that would readily permit an ordinary person to identify a specific individual's video-watching behavior." *Nickelodeon*, 827 F.3d at 290. The Ninth Circuit has adopted the Third Circuit's approach, *Eichenberger*, 876 F.3d at 985, as have courts in this District, *see, e.g.*, *Wilson*, 598 F. Supp. 3d at 91–92; *Robinson*, 152 F. Supp. 3d at 180. The Second Circuit has not yet spoken on this point.

The FAC's allegations here satisfy either standard. Courts have uniformly held Facebook IDs to constitute PII under the VPPA, particularly where—as here—the plaintiff alleges that her Facebook ID was disclosed alongside the viewed video's URL and name. *See, e.g.*, *Harris v. Pub. Broad. Serv.*, No. 22 Civ. 2456 (MLB), 2023 WL 2583118, at *5 (N.D. Ga. Mar. 20, 2023) ("[T]he bundling of the [Facebook ID] from the c_user cookie with the URLs of the videos Plaintiff watched" through the Facebook pixel alleged PII); *Belozerov v. Gannett Co.*, No. 22 Civ. 10838 (NMG), 2022 WL 17832185, at *4 (D. Mass. Dec. 20, 2022) (collecting cases) ("A Facebook ID meets the broad definition of PII in this circuit."); *Czarnionka*, 2022 WL 17069810, at *3 (Facebook ID was PII); *Lebakken*, 2022 WL 16716151, at *4 ("[Plaintiff] adequately alleged that [defendant] disclosed her Facebook ID and email address in connection with her video viewing information to Facebook and that the disclosure of such information constituted a disclosure of PII."); *Ellis v. Cartoon Network, Inc.*, No. 14 Civ. 484 (TWT), 2014

12

WL 5023535, at *3 (N.D. Ga. Oct. 8, 2014) ("[T]he disclosure of a Facebook ID, which can identify a specific person without any additional steps, does qualify as personally identifiable information."), *aff'd on other grounds*, 803 F.3d 1251 (11th Cir. 2015); *In re Hulu Priv. Litig.*, No. 11 Civ. 03764 (LB), 2014 WL 1724344, at *13, *16 (N.D. Cal. Apr. 28, 2014) (denying summary judgment because it "could be a VPPA violation" that Hulu knew it was transmitting Facebook ID through c_user cookie, along with watch page and embedded video name); *cf. Robinson*, 152 F. Supp. 3d at 184 (distinguishing an anonymized Roku device serial number from a Facebook ID, which is "equivalent to a name—it stands in for a specific person, unlike a device identifier"); *see also Eichenberger*, 876 F.3d at 986 (declining to resolve question definitively, but noting that "[a] Facebook link or an email address may very well readily enable an 'ordinary person' to identify an individual"); *In re Nickelodeon*, 827 F.3d at 289 n.174 (3d Cir. 2016) (same, but noting that "even a numeric identifier might qualify as [PII]" in certain circumstances, and citing *In re Hulu*'s holding that a Facebook ID constitutes PII because, unlike "unique, anonymous IDs," it "identif[ies] the Hulu user's actual identity on Facebook").

NBCU relatedly argues that, on the facts alleged, it did not disclose PII because "the only parties that can read the [Facebook] cookie's contents—including any stored FID value—are Facebook and the user." Mem. at 12. It contends that "disclosure of a Facebook cookie does not identify a specific person to an 'ordinary person,'" and, therefore, is not PII. *Id.* But that argument conflates the type of information disclosed with the recipient of its disclosure. The VPPA addresses only the former. *See* 18 U.S.C. § 2710(a)(3) (PII encompasses "information which identifies a person"); *cf. Eichenberger*, 876 F.3d at 985 ("[T]he statute . . . looks to what information a video service provider discloses, not to what the recipient of that information

decides to do with it . . . [or] its recipient's capabilities.").[8]  Disclosure of the PII alleged here, a Facebook ID, would "readily permit an ordinary person to identify the specific individual's video-watching behavior."  *Eichenberger*, 876 F.3d at 985; *see, e.g.*, *Harris*, 2023 WL 2583118, at *4 (alleged PII where Facebook IDs transmitted in c_user cookies); *Goldstein v. Fandango Media, LLC*, No. 22 Civ. 80569 (KAM), 2023 WL 3025111, at *2 (S.D. Fla. Mar. 7, 2023) (same); *Feldman v. Star Trib. Media Co. LLC*, No. 22 Civ. 1731 (ECT) (TNL), 2023 WL 2388381, at *9 (D. Minn. Mar. 7, 2023) (same); *Belozerov*, 2022 WL 17832185, at *1, *4 (same); *Czarnionka*, 2022 WL 17069810, at *3 (same); *cf. Jefferson v. Healthline Media, Inc.*, No. 22 Civ. 05059 (JD), 2023 WL 3668522, at *1 (N.D. Cal. May 24, 2023) (same, where alleged Facebook ID transmitted through Facebook pixel).[9]

Insofar as the statutory definition of PII includes that the identified person "requested or obtained *specific video materials* or services," 18 U.S.C. § 2710(a)(3), the FAC also adequately

---

[8] *In re Hulu*, on which NBCU relies, *see* Mem. at 12 (citing 2014 WL 1724344, at *4), is inapposite.  That decision, which resolved a motion for summary judgment, found the evidence to support that the "only servers that can access a particular cookie are those associated with the domain that wrote the cookie."  2014 WL 1724344, at *4.  The FAC here does not contain any such allegations.

[9] In another related argument, NBCU asserts that the user's browser—not Today.com—literally sends the cookie containing PII to Facebook.  Mem. at 4.  But the FAC, whose well-pled factual allegations must be credited on a motion to dismiss, alleges that NBCU took affirmative steps to install the Facebook pixel, making NBCU accountable for the disclosure of Golden's PII.  *Compare* FAC ¶¶ 4–6, 34–37, *with, e.g.*, *Harris*, 2023 WL 2583118, at *5 (rejecting identical argument), *and Czarnionka*, 2022 WL 17069810, at *4 (allegations that defendant programmed website to include Facebook pixel sufficient to allege it disclosed PII knowingly); *cf. In re Nickelodeon*, 827 F.3d at 281 (dismissing claim against Google as browser that conveyed PII "[b]ecause we conclude that only video tape service providers . . . can be liable under subsection (c) of the Act"); *Daniel v. Cantrell*, 375 F.3d 377, 383–84 (6th Cir. 2004) (holding, in context of rentals from a brick-and-mortar video store:  "[I]f any person could be liable under the [VPPA], there would be no need for the [VPPA] to define a [video tape service provider] in the first place" and, therefore, "non-video store defendants do not fit within the definition of [video tape service provider].").

alleges that Today.com disclosed "specific video materials"—to wit, each video's URL and name.  *See, e.g.*, *Harris*, 2023 WL 2583118, at *5 (PII alleged where complaint alleged that Facebook ID, URL address, and webpage title only); *Feldman*, 2023 WL 2388381, at *9 (same); *Ambrose*, 2022 WL 4329373, at *1 (same); *Czarnionka*, 2022 WL 17069810, at *1 (same); *cf. Sellers*, 2023 WL 4850180, at *3 (same, where complaint made general allegation that Facebook pixel disclosed name of viewed video); *Jefferson*, 2023 WL 3668522, at *1 (same).[10]  NBCU faults the FAC for not alleging that Today.com disclosed to Facebook how the users interacted with Today.com's videos—for example, whether the user watched or merely accessed the video. Mem. at 10.  But NBCU has not identified any statutory text or case authority making liability turn on whether the plaintiff whose video access was disclosed had actually watched the video(s)

---

[10] *Martin v. Meredith Corp.*, on which NBCU relies, is distinguishable.  *See* Mem. at 8 (citing No. 22 Civ. 4776 (DLC), 2023 WL 2118074, at *3 (S.D.N.Y. Feb. 17, 2023), *appeal withdrawn*, No. 23-412, 2023 WL 4013900 (2d Cir. May 24, 2023)).  The complaint there alleged generally that People.com "caus[ed] the . . . titles of the videos viewed to be shared with Facebook," but its other allegations "reveal[ed]" "that the information disclosed d[id] not actually include the title of a video," but only the name of the webpage visited.  *Id.* at *4.  Holding that the complaint's more specific allegations contradicted and trumped its general allegations, the court found a failure to allege PII as statutorily defined.  *Id.*  NBCU argues that the FAC here similarly contains only generalized allegations that Today.com shared the video titles, and that those are contradicted by the screenshot of Today.com code contained in the FAC, which "only shows that a user clicked on a link and visited a specific webpage."  Mem. at 10.  It argues that, in the example excerpted in the FAC, the "thematic title" of the URL, *see* FAC ¶ 45, differs from the article and video titles, as reflected in another screenshot.  *See* Mem. at 10.  *But see* Opp. at 5–6 (FAC alleges video title disclosed); *see* FAC ¶¶ 35, 45.

NBCU's argument is unpersuasive, for at least two reasons.  First, the VPPA permits disclosure of PII "to any person if the disclosure is solely of the names and addresses of consumers and if . . . [it] does not identify the title, description, *or subject matter* of any . . . audio visual material." 18 U.S.C. § 2610(2)(d)(ii) (emphasis added).  Here, regardless whether the "title" of the viewed videos were disclosed, the FAC plausibly alleges that the disclosure of the URL identifies the subject matter of the viewed video.  *See, e.g.*, FAC ¶¶ 44–45.  Second, as the case law above overwhelmingly holds, a complaint need not allege the disclosure of specific video titles; rather, the disclosure together of the user's Facebook IDs and the URLs of the videos the user accessed suffices.

at issue.  It would be surprising if the VPPA required such for liability.  The statute, after all, was

prompted by disclosure of the list of videos Judge Bork rented—not those he had viewed.  *Cf.* S.

Rep. 100–599, at 2 (1988) (VPPA purpose was "extend privacy protection to *records* that

contain information about individuals" (emphasis added)).

Accordingly, the FAC adequately alleges that Today.com disclosed PII within the

meaning of the VPPA.[11]

### 3.      Did Today.com Disclose PII Knowingly?

NBCU next argues that the FAC does not adequately allege that it disclosed PII

"knowingly" within the meaning of the VPPA.

To this end, NBCU first faults the FAC for not pleading that, "on a visitor-to-visitor

basis," Today.com knew or had a way to know what information was saved in a given user's

browser, or whether the identified user's computer had been operated by another person, such

that the disclosed information might not accurately reflect the identified user's viewing activity.

Mem. at 20–21.  NBCU does not cite any authority requiring this level of knowledge for liability

under the VPPA.  Here, the FAC alleges that NBCU took affirmative steps to install, FAC ¶¶ 4–

6, 34–37, and program the Facebook pixel to collect and transmit information regarding each

visitor's on-demand video viewing, *id.* ¶¶ 37, 73, and that it did so to profit from advertising and

information services, *id.* ¶ 35, with the understanding that the pixel would transmit users'

information to Facebook, *id.* ¶¶ 40, 73.  That is sufficient to allege NBCU acted "knowingly."

*See Harris*, 2023 WL 2583118, at *6–7 (standard of "knowing" disclosure met where complaint

---

[11] NBCU faults the FAC for not naming the specific webpages which Golden accessed on
Today.com.  Mem. at 10–11.  That does not warrant dismissal.  The FAC's allegation suffices
that Golden viewed on-demand media on Today.com, while logged into her Facebook account,
and that "[her] Personal Viewing Information was disclosed to Facebook pursuant to the
systematic process described herein."  FAC ¶ 13.

alleged defendant programmed the Facebook pixel into its website code, knowing that Facebook would receive users' viewing information); *Belozerov*, 2022 WL 17832185, at *4–5 (same); *Czarnionka*, 2022 WL 17069810, at *3 (same).

NBCU also argues that the FAC is deficient because it does not allege that NBCU understood that, once a user's FID and website browsing history were transmitted to Facebook, Facebook would "link the data to create a record of a visitor's browsing history." *Id.* at 21. The FAC alleges precisely that. *See* FAC ¶¶ 73 ("Defendant knew that these disclosures identified Plaintiff and Class members to Facebook," and that their "Personal Viewing Information was disclosed to Facebook," and "chose, programmed, and intended for Facebook to receive" the specific information contained in the transmitted cookie); *id.* ¶¶ 34–37 (describing NBCU's affirmative steps to install Facebook pixel and select option to convey information about what on-demand video users viewed). The Court must credit these pleadings at this pre-discovery stage. *See Koch*, 699 F.3d at 145; *cf. Czarnionka*, 2022 WL 17069810, at *4 (defendant pled to have disclosed PII "knowingly" based on allegation that it chose to program Facebook pixel into website code, knowing it would transmit users' information to Facebook).

Accordingly, the FAC adequately alleges that Today.com knowingly disclosed PII within the meaning of the VPPA.

### 4.    Is Golden A "Consumer"?

NBCU next challenges the FAC's allegations that Golden is a "consumer" under the VPPA. This challenge is meritorious.

The VPPA defines a "consumer" as "any renter, purchaser, or subscriber of goods or services from a video tape service provider." *See* 8 U.S.C. §2710(a)(1). Of these, the FAC alleges that Golden is a "subscriber," because she "sign[ed] up for an online newsletter" from

Today.com, FAC ¶¶ 21–22, 51, provided her name, email address, and zip code during that process, *id.* ¶¶ 23, has since received emails from Today.com, *id.* ¶ 51, and has viewed pre-recorded content on Today.com's website and through its mobile app, *id.* ¶ 52.  The FAC does not allege that Golden paid to use Today.com's mobile app.

For the reasons that follow, the Court holds that the FAC falls short of pleading that Golden was a "subscriber" within the meaning of the VPPA.  The Court so holds substantially for two reasons.  First, as pled, there is no connection between the emails from Today.com for which Golden signed up and the website and mobile app through which the FAC alleges she accessed the videos at issue.  Second, as pled, Golden's receipt of Today.com emails, and her use of its mobile app, did not provide her with any video viewing benefits beyond those accessible to any member of the public who had accessed the Today.com website or app.  In so holding, the Court draws upon the recent well-reasoned decision from Judge Rochon of this District, so holding on highly similar factual allegations.  *See Salazar v. Nat'l Basketball Ass'n* ("*Salazar*"), No. 22 Civ. 07935 (JLR), 2023 WL 5016968, at *7–9 (S.D.N.Y. Aug. 7, 2023) (plaintiff not a subscriber where he alleged he signed up for online newsletter—and provided email address and other personal information to do so—while separately downloading mobile app, viewing videos through website and mobile app, and having his PII disclosed as a result of defendant's decision to install Facebook pixel).  The Court has also drawn on Judge Castel's thoughtful decision reaching the same result on substantially similar allegations.  *See, e.g.*, *Carter*, 2023 WL 3061858, at *6–7 (same, where plaintiffs signed up for email newsletter, while separately viewing videos through website and having had PII disclosed via Facebook pixel); *see also* *Austin-Spearman*, 98 F. Supp. 3d at 669–70 (same, where plaintiff only alleged to have viewed videos on website).

The VPPA does not define "subscriber."  *See Yershov*, 820 F.3d at 487; *Ellis*, 803 F.3d at 1255; *Gardener v. MeTV*, No. 22 Civ. 5963 (LCJ), 2023 WL 4365901, at *3 (N.D. Ill. July 6, 2023) (noting "voluminous briefing" as a result of absence of such a definition); *Hunthausen v. Spine Media, LLC*, No. 22 Civ. 1970 (JES) (DDL), 2023 WL 4307163, at *3 (S.D. Cal. June 21, 2023); *Carter*, 2023 WL 3061858, at *4 ("'Subscriber' is not a separately defined term under the VPPA.").  The Second Circuit has not addressed the application of this term in the context of online video streaming.  *See Gardener*, 2023 WL 4365901, at * 3; *Jefferson*, 2023 WL 3668522, at *2.  In recent cases, however, other courts have addressed attempts to impose VPPA liability to website owners that provide video content and use Facebook's pixel.  These cases have agreed that to be a "subscriber" under the VPPA requires an "ongoing commitment or relationship between the user and the entity which owns and operates the [mobile] app."  *See, e.g.*, *Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1342 (11th Cir. 2017) (plaintiff not pled to be a subscriber where "ongoing commitment or relationship with [defendant]" was not alleged); *Ellis*, 803 F.3d at 1256 ("'[S]ubscription' involves some type of commitment, relationship, or association (financial or otherwise) between a person and an entity."); *Salazar*, 2023 WL 5016968, at *8 (collecting dictionary definitions, and noting that case law has looked to the commitment and relationship between plaintiff and defendant); *Harris*, 2023 WL 2583118, at *2 ("[A]t its core, a subscription 'involves some type of commitment, relationship, or association (financial or otherwise) between a person and an entity.'"); *Austin-Spearman*, 98 F. Supp. 3d at 669 ("[C]asual consumption of web content, without any attempt to affiliate with or connect to the provider, exhibits none of the critical characteristics of a 'subscription' and therefore does not suffice to render [plaintiff] a 'subscriber.'"); *cf. Yershov*, 820 F.3d at 487 ("More on point technologically, another dictionary defines 'subscribe' as 'to receive or be allowed to access

19

Case 1:22-cv-09858-PAE   Document 34   Filed 08/23/23   Page 20 of 28

electronic texts or services by subscription' with 'subscription' defined, in turn, to include 'an agreement to receive or be given access to electronic texts or services'" (brackets omitted)); *Lebakken*, 2022 WL 16716151, at *2 ("Generally, subscribing involves some type of commitment, relationship, or association (financial or otherwise) between a person and an entity" but does not necessarily require payment." (internal quotation marks omitted)).

In the specific factual contexts presented by Golden's pleading, the courts to consider the question have further, overwhelmingly, held that, to qualify as a subscriber under the VPPA, a plaintiff must allege more than either having (1) merely downloaded a free mobile app, *see, e.g.*, *Perry*, 854 F.3d at 1341–43 (plaintiff who downloaded and viewed videos on free app was not a subscriber); *Ellis*, 803 F.3d at 1257–58 (same); *Salazar*, 2023 WL 5016968, at *2–3, *10 n.4 (same), or (2) merely signed up for a free email newsletter unrelated to her video viewing, *see, e.g.*, *id.* at *8–10 (plaintiff who signed up for free email newsletter unrelated to video viewing was not a subscriber); *Salazar v. Global* ("*Global*"), No. 22 Civ. 756 (EJR), 2023 WL 4611819, at *10–12 (M.D. Tenn. July 18, 2023) (same); *Gardener*, 2023 WL 4365901, at *5 (same); *Jefferson*, 2023 WL 3668522, at *3 (same); *Carter*, 2023 WL 3061858, at *6–7 (same). These courts have largely drawn upon the Eleventh Circuit's persuasive reasoning in *Ellis* as to the application of the statutory term to these fact patterns. *See, e.g.*, *Salazar*, 2023 WL 5016968, at *8; *Gardener*, 2023 WL 4365901, at * 5; *Jefferson*, 2023 WL 3668522, at *3; *Carter*, 2023 WL 3061858, at *4.[12]

---

[12] Other courts have agreed with the analysis in *Ellis* but have distinguished its holding on the basis of additional factual pleadings that made the plaintiff a subscriber. *See, e.g.*, *Harris*, 2023 WL 25831118, at *3; *Lebakken*, 2022 WL 16716151, at *2; *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1223 (C.D. Cal. 2017).

In *Ellis*, plaintiff Mark Ellis alleged that he had downloaded and used defendant's free mobile app to view on-demand video content.  Without more, the Eleventh Circuit held, this conduct did not make Ellis a "subscriber."  *See* 803 F.3d at 1252, 1256–57.  Drawing upon dictionary definitions and case authority, the Eleventh Circuit held that the act of "subscription" entails "some or most of the following factors: payment, registration, commitment, delivery, expressed association, and/or access to restricted content."  *Id.* at 1256 (internal alterations and quotation marks omitted).  Ellis, however, had not pled that he had created an account with the defendant, provided personal information through the mobile app, made payments to the defendant to use the app, become a registered user of defendant's app, signed up for any periodic services, or "establish[ed] any relationship that would allow him to have access to exclusive content."  *Id*. at 1257.  Ellis's claim to be a subscriber reduced to the bare fact that he had downloaded an app, an act the Circuit termed "the equivalent of adding a particular website to one's Internet browser as a favorite, allowing quicker access to the website's content."  *Id*.  Without more, the Circuit held, it did not make Ellis a "subscriber."  *Id.*

Evaluated in light of *Ellis* and the above precedents, the FAC here does not plead facts that make Golden a subscriber under the VPPA.  With respect to accessing video content, the FAC alleges that Golden did no more than Ellis:  She downloaded and used Today.com's free mobile app to view video content, and she similarly accessed video content via Today.com's website.  But as to Today.com's app and the website, Golden is not alleged to have had any indicia of a subscriber relationship.  As between Golden and either Today.com or its owner, NBCU, the FAC does not allege "payment, registration, commitment, delivery, expressed association, and/or access to restricted content," *id.* at 1256 (brackets omitted)—or other indicators of an ongoing, "durable" relationship, *Austin-Spearman*, 98 F. Supp. 3d at 669

("subscriber" under the VPPA, "[w]hatever the nature of the specific exchange," must have a "deliberate and durable affiliation with the provider"). *See also Salazar*, 2023 WL 5016968, at *8; *Carter*, 2023 WL 3061858, at *4. The FAC does not allege that Golden paid for Today.com's mobile app (or any other service), created an account with NBCU, received an NBCU ID, or established an NBCU profile.[13] Indeed, as to the mobile app and the website, the FAC does not plead any form of bilateral relationship, but merely the accessing of a service by a user. Golden's pleadings are thus on all fours with Ellis's and like plaintiffs who unilaterally accessed content (from a website or a mobile app) but whose claims have been dismissed for failure to plead subscriber status. *See, e.g.*, *Perry*, 854 F.3d at 1342 (plaintiff not a VPPA subscriber where complaint did not plead that he created an account, received an ID, or established a profile with defendant); *Salazar*, 2023 WL 5016968, at *10 (same, where no exchange of value related to video services); *Carter*, 2023 WL 3061858, at *6–7 (same); *Austin-Spearman*, 98 F. Supp. 3d at 669 (same, where, based on complaint, plaintiff did not pay for content on free website, "sign up," register for an account, establish a user ID or profile, download an app or program, "or take any action to associate herself with [defendant]").[14]

---

[13] For avoidance of doubt, the Court does not hold that, under the VPPA, payment is required for a person to be a "subscriber." The case law does not so require, *see Yershov*, 820 F.3d at 487–88; *Ellis*, 803 F.3d at 1256; *Gardener,* 2023 WL 4365901, at *3; *Jefferson,* 2023 WL 3668522, at *3; *In re Hulu Priv. Litig.*, 2012 WL 3282960, at *8 ("If Congress wanted to limit the word 'subscriber' to 'paid subscriber,' it would have said so."), as NBCU acknowledges. *See* Mem. at 14. The fact of payment would, however, support inferring a commitment characteristic of a subscriber relationship.

[14] NBCU represents, factually, that there is "no ability to open an account on its website." Mem. at 3; Reply at 5. In support, it provides a link to an archived version of Today.com's webpage from September 15, 2022, accessible via Wayback Machine. *See* Dkt. 17 ¶ 2 & Ex. A; *see also Aubrey v. New Sch.*, 624 F. Supp. 3d 403, 408 (S.D.N.Y. 2022) (taking judicial notice of webpage archived on Wayback Machine, where plaintiff "failed to even remark on Defendant's reliance" on the this source); *Distributorsoutlet.com, LLC v. Glasstree, Inc.*, No. 11 Civ. 6079 (PKC) (SLT), 2016 WL 3248310, at *2 (E.D.N.Y. June 10, 2016) (collecting cases). The

As to the email newsletter, the FAC does plead a degree of reciprocity:  In 2022, Golden signed up to receive a Today.com newsletter, and Today.com has since sent her emails and other communications.  FAC ¶¶ 13, 51.  But the FAC is devoid of allegations linking Golden's having signed up for the email newsletter to her viewing of Today.com's video offerings.  The FAC does not allege that Golden's access of these videos was facilitated in any way by her having signed up for the newsletter.

As such, the FAC's allegations regarding the newsletter do not qualify Golden as a "subscriber" under the VPPA.  Statutory interpretation "determines meaning by looking not to isolated words, but to text in context, along with purpose and history."  *Gundy v. United States*, 139 S. Ct. 2116, 2126 (2019).  The VPPA defines "consumer"—of which "subscribers" are one type—based on a person's relationship to "video tape service provider[s]."  18 U.S.C. § 2710(a)(1) (defining "consumer" as "any renter, purchaser, or subscriber of goods or services *from a video tape service provider*" (emphasis added)).  It defines "video tape service provider," in turn, as those "engaged in the business . . . of rental, sale, or delivery of prerecorded . . . audio visual materials."  18 U.S.C. § 2710(a)(4).  Thus, to qualify as a consumer under the VPPA, a

---

archived version is consistent with NBCU's representation, to which Golden has not responded. The Court has taken judicial notice of this archived webpage, although it is not necessary to this decision.

On the same subject, the Court notes that although the FAC contains a reference to an "account" opened by Golden, it does not elaborate on this "account" or allege that it had any connection to Golden's access or viewing of on-demand videos.  *See* FAC ¶ 27.  The Court puts this allegation aside in assessing whether the FAC has plead subscriber status under the VPPA.  *See Gardener*, 2023 WL 4365901, at *4 (dismissing VPPA claim where plaintiffs alleged opening "an account separate and apart from viewing video content on [defendant's] website"); *Carter*, 2023 WL 3061858, at *6 ("[T]he Complaint does not include facts that plausibly allege that their status as newsletter subscribers was a condition to accessing the site's videos, or that it enhanced or affected their viewing experience," but rather alleged that they were "subscribers to newsletters, not subscribers to audio visual materials.").

person must rent, purchase, or subscribe "to audio visual materials, not just any products or services from a video tape provider." *Salazar*, 2023 WL 5016968, at *8; *see, e.g.*, *Carter*, 2023 WL 3061858, at *6.

The FAC does not allege that Golden did so.  It does not allege that Golden could or did view videos through links embedded in email newsletters.  Indeed, it is devoid of details as to the content, format, or frequency of these newsletters.  *See, e.g.*, *Gardener*, 2023 WL 4365901, at *4 (plaintiffs not subscribers where, when signing up for email newsletter, they did not pay, make a commitment to view video content, "otherwise exchange[] anything of value to do so, or receive[] special access to certain content"); *Jefferson*, 2023 WL 3668522, at *3 (dismissing VPPA claim where plaintiff alleged that she gave defendant her name and email address to subscribe to its email list, but "no information [was] provided about th[at] list"); *Carter*, 2023 WL 3061858, at *6 (plaintiffs not subscribers where they did not allege they watched videos embedded in email newsletters themselves, or that newsletter subscription was required to access videos, functioned as a login, or provided extra benefits to viewers; "Plaintiffs were free to watch or not watch hgtv.com videos without any type of obligation, no different than any of the other 9.9 million monthly visitors to the site."); *cf. Austin-Spearman*, 98 F. Supp. 3d at 669 (plaintiff not subscriber where her visits to defendant's website to "view various videos . . . evince no desire to forge ties with [defendant]"; plaintiff "can decide to never visit the AMC website ever again—and that decision will have zero consequences, costs, or further obligations").

And, as noted, the same is true for the FAC's allegations as to the Today.com mobile app. It does not allege that Golden had to download the app to access on-demand video content or that doing so gave Golden any enhanced access to such content. *See, e.g.*, *Ellis*, 803 F.3d at 1256 (considering, as factor bearing on VPPA "subscriber" status, whether alleged relationship gave

plaintiff "access to restricted content"); *Salazar*, 2023 WL 5016968, at *10 (plaintiff not subscriber where complaint did not allege that he received enhanced access to video content); *Global*, 2023 WL 4611819, at *10 ("The complaint did not allege that the video content of hgtv.com was available only through subscription to the newsletter."); *cf., e.g.*, *Gardener*, 2023 WL 4365901, at *4 (plaintiffs not subscribers where email subscription was "unconnected to their ability to access video content"); *Carter*, 2023 WL 3061858, at *6 (plaintiff not a subscriber where complaint did not allege that signing up for email newsletter enhanced or in any way affected plaintiff's viewing experience).[15]

The Court, accordingly, grants NBCU's motion to dismiss the VPPA claim, because the FAC fails to allege that Golden is a "subscriber" within the meaning of the statute.  The contrary holding, on the sparse allegations here, would mean "that so long as the provider has been able to access a user's information, the protections of the VPPA should apply, and whatever the user has done to enable such access (here, simply browsing while logged onto Facebook) is thereby sufficient to render her a subscriber." *Austin-Spearman*, 98 F. Supp. 3d at 670.  The overwhelming weight of authority, canvassed above, rightly rejects this theory. *See, e.g., id.* (collecting cases).[16]

---

[15] Although the VPPA's text is dispositive on this point, the 1988 Senate Report reinforces reading the statute to limit liability to disclosures arising from consumers' video-related interactions with the defendant. *See Salazar*, 2023 WL 5016968, at *9 (quoting S. Rep. No. 100-–599, at 12 (1988) (definition of PII drafted to make clear "that simply because a business is engaged in the sale or rental of video materials or services does not mean that all of its products or services are within the scope of the bill")); *Carter*, 2023 WL 3061858, at *6 (quoting same).

[16] For the reasons above, the Court, like *Ellis* and the precedents following it, is unpersuaded by the limited cases holding a plaintiff who downloaded and viewed videos through a free mobile app to be a VPPA "subscriber."  In any event, these cases are factually distinct from this case, in that in each, as pled, the plaintiff, to gain video access, had supplied some unique information to the mobile app, or created an account with the defendant. *See, e.g., Yershov*, 820 F.3d at 488–89

The Court will, however, grant Golden leave to amend the VPPA claim—as she has requested, without opposition from NBCU.  *See* Opp. at 13 n.9.  Federal Rule of Civil Procedure 15 provides that courts should "freely give leave [to amend] when justice so requires"; the Second Circuit has construed this "liberal standard" to bespeak a "strong preference for resolving disputes on the merits"; and the circumstances that often counsel against granting leave to amend—such as undue delay, bad faith, dilatory motive, or futility—are not present.  *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015). Specifically, the Court will permit Golden to amend the FAC for the limited purpose of adding factual allegations as to the operation of the mobile app and email newsletter.  The FAC's sparse allegations on these subjects make it theoretically possible that such an amendment could fortify Golden's claim to have been a VPPA subscriber.  *Cf. Salazar*, 2023 WL 5016968, at *10 (requiring, in amended complaint, allegations of "exchange of value" "vis-à-vis video services"). Golden will not have further opportunities to amend.

### B.    Golden's Unjust Enrichment Claim

The FAC's unjust enrichment claim is based on the same allegations as its VPPA claim. *See, e.g.*, FAC ¶ 78.  NBCU seeks dismissal on the ground that the unjust enrichment claim is duplicative of her VPPA claim.  Mem. at 21–22.  Golden does not dispute that the claims are duplicative, but notes that duplicative claims may sometimes coexist as alternatives at an early

---

(to access mobile app, plaintiff had had to provide his Android ID and his mobile device's GPS location); *Jackson v. Fandom, Inc.*, No. 22 Civ. 04423 (JST), 2023 WL 4670285, at *4 (N.D. Cal. July 20, 2023) (plaintiff created an account with defendant); *Harris*, 2023 WL 25831118, at *3 (same); *Lebakken*, 2022 WL 16716151, at *2 (same); *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1223 (C.D. Cal. 2017) (plaintiff paid for video streaming service); *Czarnionka*, 2022 WL 17069810, at *1 (plaintiff subscribed to website by registering with name, email address, and billing information).

stage of a litigation.  Opp. at 12–13.  NBCU counters that the FAC does not plead facts under which the outcome of the two claims could differ.  Reply at 9–10.  NBCU is correct.

To allege unjust enrichment under New York law, a plaintiff must plead that the defendant benefitted at the plaintiff's expense, and that equity and good conscience require restitution.  *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006).  Unjust enrichment "is not a catchall cause of action to be used when others fail," and is not available where "it simply duplicates, or replaces, a conventional contract or tort claim."  *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012); *see Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*, 400 F. App'x 611, 613 (2d Cir. 2010) ("Unjust enrichment is an equitable claim that is unavailable where an adequate remedy at law exists."). "[E]ven pleaded in the alternative, claims for unjust enrichment will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action."  *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 679 (E.D.N.Y. 2017); *see Bourbia v. S.C. Johnson & Son, Inc.*, 375 F. Supp. 3d 454, 466 (S.D.N.Y. 2019) (same); *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 296 (S.D.N.Y. 2015) (same).

Here, the unjust enrichment claim is based on the same allegations as the VPPA claim and Golden, despite the opportunity, has not explained how the two claims differ.  Accordingly, to the extent that the VPPA claim "succeed[s], the unjust enrichment claim is duplicative" and if the VPPA claim is "defective, an unjust enrichment claim cannot remedy the defects."  *Corsello*, 18 N.Y.3d at 791.  The Court thus dismisses the unjust enrichment claim.  *See id.* at 790 (dismissing unjust enrichment claim that duplicated statutory claim); *Gardener,* 2023 WL 4365901, at *5 (dismissing unjust enrichment claim as duplicative of VPPA claim); *Lin v.*

*Canada Goose US, Inc.*, No. 21 Civ. 7614 (LGS), 2022 WL 16926312, at *6 (S.D.N.Y. Nov. 14, 2022) (dismissing unjust enrichment claim as duplicative of statutory claim); *Ohanian v. Apple Inc.*, No. 20 Civ. 5162 (LGS), 2022 WL 826415, at *4 (S.D.N.Y. Mar. 18, 2022) (same).

## CONCLUSION

For the reasons stated above, the Court grants NBCU's motion to dismiss Golden's FAC in its entirety.  This dismissal is without prejudice to Golden's right to timely replead the VPPA claim, for the limited purpose of adding allegations as to the operation of Today.com's mobile app and email newsletter, as explained above.  A second amended complaint, adding such allegations is due Thursday, September 7, 2023.  If such a complaint is not filed by that date, the Court will then close this case, with prejudice to the filing of an amended complaint.


SO ORDERED.

Paul A. Engelmayer
United States District Judge


Dated:  August 23, 2023
        New York, New York