UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

SHERHONDA GOLDEN,

                           Plaintiff,

         -v-

NBCUNIVERSAL MEDIA, LLC,

                           Defendant.

22 Civ. 9858 (PAE)

OPINION & ORDER

------------------------------------------------------------

PAUL A. ENGELMAYER, District Judge:

      Plaintiff Sherhonda Golden brings this putative class action against NBCUniversal Media, LLC ("NBCU") alleging violations of the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA") and unjust enrichment. In August 2023, the Court granted NBCU's motion to dismiss Golden's First Amended Complaint ("FAC") in its entirety, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Dkt. 34 ("August 2023 Decision" or "Op."). In dismissing the VPPA claim, the Court held, *inter alia*, that the FAC fell short of pleading that Golden was a "consumer" within the meaning of the VPPA. *See* 18 U.S.C. § 2710(a)(1). The Court, however, permitted Golden leave to amend the FAC and replead the VPPA claim for the limited purpose of adding factual allegations as to the operation of NBCU's mobile app and email newsletter. The Court noted that the FAC's "sparse allegations on these subjects make it theoretically possible that such an amendment could fortify Golden's claim to have been a VPPA subscriber." Op. at 26. Golden thereafter amended and filed the Third Amended Complaint ("TAC"), the operative complaint today. *See* Dkt. 38 ("TAC").[1]

---

[1] On September 7, 2023, Golden filed a Second Amended Complaint. Dkt. 35. On September 14, 2023, after the parties conferred, Golden, with NBCU's consent, filed the TAC. Dkt. 38.

Pending now is NBCU's motion to dismiss the TAC, again for failure to state a claim under Rule 12(b)(6). For the reasons that follow, the Court grants NBCU's motion.

## I.  Factual Background[2]

The Court assumes familiarity with the background and incorporates by reference the detailed factual account in its August 2023 Decision. The following summary focuses on the facts—as amplified by the factual allegations added by the TAC—necessary for an assessment of the limited issue presented.

### A.  Today.com's Website and Newsletter

NBCU owns and operates Today.com, a website accessible from a desktop computer or a mobile app. TAC ¶¶ 1, 31. Today.com offers both live and on-demand video content.

The website also allows users to "sign up" for a daily digital newsletter. *Id.* ¶ 25. Today.com directs users, who wish to sign up for a newsletter, to enter an email address and click "sign up." *Id.* As an illustration, TAC presents the following screenshot of the screen that users would have seen on November 18, 2022 on the Today.com website to sign up for a newsletter:

---

[2] The following facts are drawn primarily from the TAC. *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."). For the purpose of resolving the motion to dismiss under Rule 12(b)(6), the Court presumes all well-pled facts to be true and draws all reasonable inferences in favor of plaintiff. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).



*Id.* Newsletter recipients provide NBCU with their internet protocol ("IP") address, a unique number assigned to all information technology connected devices, which conveys the device's city, zip code, and physical location to NBCU. *Id.* ¶ 32.

Once a user signs up, a daily digital newsletter is delivered to the email address that the user provided to Today.com. The newsletters contain hyperlinks to "web-hosted audio visual content, exclusive content, and direct, prominently featured links to audio visual content on Today.com." *Id.* ¶ 35.

The TAC incorporates an excerpt of a screenshot of a "This is Today" daily digital newsletter from September 6, 2023 that would have been sent to a user's email address:



*Id.* ¶ 26. The TAC alleges that Today.com lets users who have signed up for a daily newsletter know that they can: (1) refer a friend to "subscribe here"; (2) manage their "subscriptions"; and (3) "unsubscribe" from their subscription to the newsletter. *Id.* ¶ 27.

Today.com permits users to sign up for multiple daily digital newsletters. These include ones entitled: This is TODAY; Start TODAY; Stuff We Love; TODAY On the Show; TODAY Food; TODAY Parents; Read with Jenna; Concert Series Alerts, Show Updates, Special Events & Offers. *Id.* ¶ 28. NBCU offers these daily newsletters "with the goal of building an ongoing relationship with its subscribers . . . by having direct access to and delivering content to each subscriber's inbox." *Id.* ¶ 29. These daily digital newspapers also "drive interactions with [NBCU's] own website and video content." *Id.*

**B.    Facebook Pixel**

Today.com's privacy policy as of February 2023 states that it automatically collects certain information—including "content you view and duration." *Id.* ¶ 37.[3] The policy does not

---

[3] NBCU updated its privacy policy on December 16, 2022, approximately one month after Golden filed this lawsuit. TAC ¶ 37 n.2.

4

disclose, however, that Today.com shares that information with third parties, including, as relevant here, Facebook. *Id.* ¶ 39.

Today.com installed Facebook's tracking pixel (the "Pixel") to transmit certain information about users to Facebook, which Facebook then uses to show users targeted ads. *Id.* ¶ 40. The Pixel tracks users' actions on Facebook advertisers' websites and reports them to Facebook. *Id.* ¶ 41. To obtain the code for the Facebook Pixel, the website advertiser informs Facebook which website events it wishes to track (for example, video media). Facebook, in turn, generates corresponding pixel code for the advertiser to include in the code of its website. *Id.* Specifically, when a digital newsletter recipient watches video content, Today.com transmits to Facebook a cookie[4] with the video content name, the URL of the prerecorded video that was viewed, and, for visitors with an active and logged-in Facebook account, the viewer's Facebook identification number ("FID" or "Facebook ID"). *Id.* ¶¶ 43, 46–47. An FID is a unique and persistent identifier Facebook assigns to each Facebook user. *Id.* ¶ 46. Anyone can use an FID to look up a Facebook profile, which "typically contains a wide range of demographic and other information about the user." *Id.* ¶ 47.

When installing the Facebook Pixel, "developers and marketers can optionally choose to send additional information about the visit through Custom Data events." *Id.* ¶ 45 (cleaned up). The TAC alleges that NBCU programmed the Pixel to transmit to Facebook information about users' video viewing. *Id.* ¶ 46 (NBCU declined to program website or app so as not to transmit

---

[4] A cookie is "a small file or part of a file stored on a World Wide Web user's computer, created and subsequently read by a website server, and containing personal information (such as a user identification code, customized preferences, or a record of pages visited)." *Cookie*, MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/cookie.

5

video viewing information); *id.* ¶ 84 (NBCU programmed pixel so that Facebook received video content name, URL, and user's FID).

As a result of the Pixel installation, when users clicked on hyperlinks on the daily digital newsletter to view video content on Today.com, the Pixel transmitted to Facebook information permitting it "to know what video content is being consumed, and that the content was accessed via a daily digital newsletter." *Id.* ¶ 35. The Pixel transmits users' information without their consent or knowledge. *Id.* ¶ 62. NBCU benefits financially from providing this information to Facebook. *Id.* ¶ 42.

### C.    Golden's Experience

In 2022, Golden signed up to receive a Today.com newsletter. *Id.* ¶ 59. She has since received emails and other communications from Today.com. *Id.* Golden has accessed audio-visual content via hyperlinks provided in the daily digital newsletters. *Id.* ¶ 60. She has also accessed Today.com's content through its website and mobile app. *Id.* ¶¶ 17, 61.

Golden has had a Facebook account since approximately 2012. *Id.* ¶ 61. During the period relevant here, she has used her Today.com subscription to view videos through Today.com or its mobile app while concurrently logged into her Facebook account. *Id.* ¶ 17. Golden never agreed, authorized, or otherwise consented to NBCU's disclosure of her personal video viewing information to Facebook, and has not been given written notice stating that it is NBCU's practice to do so. *Id.* ¶ 62.

### II.    Procedural History

On November 18, 2022, Golden filed her original Complaint. Dkt. 1. On January 27, 2023, NBCU moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Dkt. 8. On February 17, 2023, after the Court issued an amend-or-oppose order, Dkt. 13, Golden filed the FAC, on behalf of a putative class, alleging VPPA and unjust enrichment

6

claims, Dkt. 14. On March 10, 2023, NBCU moved to dismiss the FAC, Dkt. 15, and filed a memorandum of law, Dkt. 16, and declaration, Dkt. 17, in support. On April 7, 2023, Golden opposed. Dkt. 21. On April 21, 2023, NBCU replied. Dkt. 22. On August 23, 2023, the Court issued the opinion granting NBCU's motion to dismiss, without prejudice to Golden's right to amend the VPPA claim, for the limited purpose of adding allegations as to the operation of Today.com's mobile app and email newsletter to buttress its claim that Golden qualified as a subscriber under the VPPA. Dkt. 34 ("Op.").

On September 7, 2023, Golden filed a Second Amended Complaint. Dkt. 35. On September 14, 2023, Golden filed, with NBCU's permission, the now operative TAC. Dkt. 38. On September 21, 2023, consistent with a schedule the Court set, Dkt. 36, NBCU moved to dismiss the TAC for failure to state a claim under Rule 12(b)(6), Dkt. 40, and filed a brief letter in support, Dkt. 41 ("Def. Mem."). On October 5, 2023, Golden opposed. Dkt. 42 ("Pl. Opp."). On October 12, 2023, NBCU filed a reply. Dkt. 43 ("Reply").

### III.  Applicable Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. When resolving a motion to dismiss, the Court must assume all well-pled facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch*, 699 F.3d at 145; *see also A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993) ("[A]ll allegations are construed in the light most favorable to the plaintiff and

7

doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party."). That tenet, however, does not apply to legal conclusions. *See Iqbal*, 556 U.S. at 678. Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## IV. Discussion

The sole issue before the Court is whether the TAC adequately alleges that Golden is a "subscriber" under the VPPA.[5]

In the August 2023 Decision, the Court held, for two alternative reasons, that the FAC did not do so, requiring its dismissal. First, the FAC failed to plead any connection between the newsletter emails from Today.com for which Golden subscribed, on the one hand, and the website and mobile app through which Golden had accessed the videos at issue. Op. at 18. Instead, the FAC merely alleged that Golden had downloaded a free mobile app and viewed videos, and, unrelated to her video viewing, she had signed up for a free email newsletter. *Id.* at 20. Second, the FAC failed to allege that Golden's receipt of the Today.com newsletter and her use of the mobile app gave her any video viewing benefits beyond those accessible to a general member of the public. *Id.*

NBCU contends that the TAC, notwithstanding Golden's efforts to fortify it, again fails to state a claim. The Court agrees.

The TAC does not add any allegations linking Golden's subscription to her use of the free mobile app. That aspect of her usage thus still cannot support a VPPA claim, for the reasons the August 2023 Decision set out. The TAC does add allegations attempting to link the emailed

---

[5] The VPPA defines "consumer" as a "renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710. The TAC's claims are premised on Golden being a subscriber, not a renter or purchaser. Such is therefore the focus of this decision.

8

newsletter that Golden receives to her video viewing on Today.com. It alleges that the emailed newsletter included hyperlinks to videos on Today.com's website, and that Golden clicked on the hyperlinks there to access these videos. TAC ¶¶ 35, 60. As such, with respect to Today.com's email newsletter—but not the free mobile app—the first basis for dismissal in the August 2023 Decision does not require dismissal of the TAC, given its allegations linking Golden's newsletter subscription to her video viewing activity.

The second basis for dismissal set out in the August 2023 Decision, however, equally applies to the TAC. Although adding the allegation that the newsletters contained hyperlinks to NBCU's "web-hosted audio visual content," *id.* ¶ 35, the TAC is devoid of any allegations that these hyperlinks gave Golden access to *exclusive* video content otherwise unavailable to a member of the general public who is not a newsletter subscriber. The TAC is similarly devoid of any allegations that the newsletter subscription or mobile app gave Golden any unique video viewing benefits beyond those accessible to any general member of the public.

These deficiencies require dismissal of the TAC. Under the VPPA, "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person." 18 U.S.C. § 2710(b)(1). The term "consumer' is defined as "any renter, purchaser, or subscriber of goods or services from a video tape service provider." *Id.* § 2710(a)(1). The TAC, like the FAC, relies on the term "subscriber," alleging that Golden is such because she signed up for a daily digital newsletter and other emailed communications on Today.com by providing her email address and IP address. TAC ¶¶ 25–29, 59. The TAC also alleges that the newsletters provided exclusive non-video content and non-exclusive video content. It alleges that Golden clicked on hyperlinks

9

in the daily digital newspapers to access the non-exclusive video content hosted on Today.com's website. *Id.* ¶ 60.

Critically here, although the VPPA does not define "subscriber," courts have agreed that, to qualify as a "subscriber" under the VPPA requires "some type of commitment, relationship, or association (financial or otherwise) between a person and an entity." *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1256 (11th Cir. 2015); *see also* Op. at 19–20 (collecting cases). Factors that courts have considered in making this determination include: "payment, registration, commitment, delivery, expressed association, and/or access to restricted content." *Ellis*, 803 F.3d at 1256 (cleaned up). In addition, courts have explained that the "scope of a 'consumer' . . . is cabined by the definition of 'video tape servicer provider,' with its focus on the rental, sale or delivery of audio visual materials." *Carter v. Scripps Networks, LLC*, 670 F. Supp. 3d 90, 99 (S.D.N.Y. 2023). Thus, a "consumer under the VPPA—and necessarily, a 'renter, purchaser, or *subscriber*' under the VPPA—consumes (or rents, purchases, or subscribes to) audio visual materials, not just any products or services from a video tape services provider." *Salazar v. Nat'l Basketball Ass'n*, 685 F. Supp. 3d 232, 244 (S.D.N.Y. 2023); *see also Carter*, 670 F. Supp. 3d at 98 ("In the statute's full context, a reasonable reader would understand the definition of 'consumer' to apply to a renter, purchaser or subscriber of audio-visual goods or services, and not goods or services writ large.").

The TAC, however, does not plead that Golden's free subscription to the Today.com daily digital newsletter was a subscription to "audio visual materials." 18 U.S.C. § 2710 (a)(4). It alleges that Golden clicked "sign up" to receive a daily digital newspaper via email. TAC ¶ 25. But the digital newsletters did not directly contain or embed any videos. And although the newsletters allegedly contained hyperlinks to video content hosted on Today.com's website, *id.*

10

¶¶ 35, 60, the TAC does not allege that this video content gave Golden access as a newsletter subscriber to any material that was not generally and publicly available. On the basis of the TAC, anyone could access the same videos by accessing Today.com's website, regardless whether that person subscribed to the daily digital newsletters. Golden's subscription to the digital newspaper thus did not gain her access in any way to unique or exclusive video content or enhances her access.[6] Her subscription to the newsletter cannot be treated as tantamount to a subscription to videos or other audio-visual content.

*Carter v. Scripps Networks*, 670 F. Supp. 3d 90, 97 (S.D.N.Y. 2023), and *Salazar v. National Basketball Association*, 685 F. Supp. 3d 232, 236 (S.D.N.Y. 2023), are squarely on point. In *Carter*, plaintiffs claimed that "their subscriptions to hgtv.com newsletters make them subscribers under the VPPA." *Id.* at 98. Like Golden, the plaintiffs in *Carter* subscribed to these newsletters "by entering an email address and choosing from among eight different newsletters." *Id.* at 99. These newsletters "advertise[d] and promote[d] videos and articles on [the hgtv.com website]." *Id.* The court, however, rejected plaintiffs' contention that they were "subscribers" under the VPPA because the complaint did "not include facts that plausibly allege that [the plaintiffs'] status as newsletter subscribers was a condition to accessing the site's videos, or that it enhanced or in any way affected their viewing experience." *Id.* The same is so here. As in *Carter*, Golden's TAC does not allege "that a newsletter subscription was required to access th[e] videos, functioned as a login, or gave newsletter subscribers extra benefits as viewers." *Id.* No different from any other website visitor, Golden was "free to watch or not watch" the videos

---

[6] The TAC does allege that the newsletter gave Golden access to exclusive non-video content. *See* TAC ¶ 60 ("These daily digital newsletters contain exclusive content and hyperlinks to Defendant's web-hosted audio-visual content."). But that allegation reinforces that Golden was a *newsletter* subscriber, not a subscriber to video content.

11

"without any type of obligation." *Id.* As such, Golden, like Carter, was a "subscriber[] to newsletters, not [a] subscriber[] to audio visual materials." *Id.*

In *Salazar*, the court dismissed the VPPA claim for similar reasons. Salazar had registered on NBA.com for an online newsletter by providing personal information, including an email address. Salazar alleged that he used his digital subscription to view videos on NBA.com. But the Court noted that "he does not allege that the newsletters contained videos." *Id.* at 244. And, like Golden, Salazar did "not allege that his newsletter subscription allowed him access to the videos on the NBA.com site that any member of the public would not otherwise have." *Id.* at 245. As such, the complaint had "alleged that [Salazar] was a subscriber[] to newsletters, not [a] subscriber[] to audio visual materials." *Id.* (internal quotation marks omitted). The court also rejected Salazar's argument that the fact that the NBA newsletter contained links to video content meant that Salazar was a subscriber to such content. In language apposite here, it held: "Even if the Complaint did allege that the newsletter contained *links* to videos on the NBA.com website . . ., links to video content which is generally accessible on the NBA.com website are insufficient to create a subscribership relationship (or exchange of value) vis-à-vis video services given the lack of allegations regarding exclusive content or enhanced access." *Id.* 245–46; *see also Ellis*, 803 F.3d at 1256 (considering, as a factor bearing on VPPA "subscriber" status, whether alleged relationship gave plaintiff "access to restricted content"). Similarly here, Golden's access to a newsletter that contained hyperlinks to videos on the Today.com website— that non-subscribers could just as easily access on the same website—does not make her a *subscriber to video content. See also Hughes v. Nat'l Football League*, No. 22 Civ. 10743 (JLR), 2024 WL 4063740, at *1 (S.D.N.Y. Sept. 5, 2024) ("For substantially the same reasons stated in *Salazar*, Plaintiff does not plausibly allege that his NFL.com subscription 'render[s]

12

him a consumer of goods or services from a video tape service provider under the VPPA.'" (citation omitted)).

The TAC thus does not state a claim that Golden was a "subscriber," and therefore a "consumer," under the VPPA. Accordingly, the Court grants NBCU's motion to dismiss the VPPA claim.[7]

## CONCLUSION

For the reasons stated above, the Court grants NBCU's motion to dismiss the TAC. The Clerk of the Court is respectfully directed to terminate the motion pending at Docket 40 and to close this case.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: September 11, 2024
New York, New York

---

[7] The Court is mindful that an appeal in *Salazar* is pending. In the event the Second Circuit resolves *Salazar* in a manner inconsistent with this decision, Golden may move for relief from this judgment under Federal Rule of Civil Procedure 60(b)(5), or, if this case is then on appeal, seek an indicative ruling from this Court under Rule 62.1.