UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHERHONDA GOLDEN,<br>individually and on behalf of all others similarly situated,<br><br>　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>NBCUNIVERSAL MEDIA, LLC,<br><br>　　　　　　　　Defendant. | Case No. 1:22-cv-9858-PAE<br><br>ORAL ARGUMENT REQUESTED |

## NBCUNIVERSAL MEDIA'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FOURTH AMENDED CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

ARGUMENT ..................................................................................................................... 2

I.   Plaintiff Fails to State a Claim Under the VPPA. ................................................... 2

     A.   Plaintiff concedes that *Solomon* forecloses her claim. ............................... 2

     B.   Plaintiff identifies no basis for disregarding *Solomon*. .............................. 4

          1.   *None of the cited Supreme Court decisions "casts sufficient doubt" on Solomon to render the decision non-binding.* .............................. 5

          2.   *Plaintiff's criticisms of Solomon's analysis are inapposite to the issue of whether the decision is binding in this Circuit.* ........................... 8

II.  Plaintiff Unjust Enrichment Claim is Duplicative of Her VPPA Claim and Fails Along with It. ............................................................................................................. 10

CONCLUSION ................................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A. J. T. by & through A. T. v. Osseo Area Schools*,
  145 S. Ct. 1647 (2025) ................................................................................................5, 6

*Ames v. Ohio Dep't of Youth Servs.*,
  87 F.4th 822 (6th Cir. 2023) ..............................................................................................6

*Ames v. Ohio Department of Youth Services*,
  145 S. Ct. 1540 (2025) ...................................................................................................5, 6

*Ark. Carpenters Health & Welfare Fund v. Bayer AG*,
  604 F.3d 98 (2d Cir. 2010) .................................................................................................8

*Austin v. United States*,
  280 F. Supp. 3d 567 (S.D.N.Y. 2017) ................................................................................4

*CC/Devas (Mauritius) Ltd. v. Antrix Corp.*,
  145 S. Ct. 1572 (2025) ...................................................................................................5, 6

*Christ the King Reg'l High Sch. v. Culvert*,
  644 F. Supp. 1490 (S.D.N.Y. 1986) ...................................................................................8

*Doscher v. Sea Port Grp. Sec., LLC*,
  832 F.3d 372 (2d Cir. 2016) ...............................................................................................4

*Eichenberger v. ESPN, Inc.*,
  876 F.3d 979 (9th Cir. 2017) ........................................................................................7, 10

*Felske v. Hirschmann*,
  No. 10-cv-8899 (RMB), 2012 WL 716632 (S.D.N.Y. Mar. 1, 2012) ............................2-3

*Golden v. NBCUniversal Media, LLC*,
  688 F. Supp. 3d 150 (S.D.N.Y. 2023) ..............................................................................10

*Hoeffner v. D'Amato*,
  605 F. Supp. 3d 467 (E.D.N.Y 2022) ................................................................................4

*Hughes v. Nat'l Football League*,
  No. 24-2656, 2025 WL 1720295 (2d Cir. June 20, 2025) .....................................1, 3, 5, 8

*In re Arab Bank, PLC Alien Tort Statute Litig.*,
  808 F.3d 144 (2d Cir. 2015) ............................................................................................4-5

*In Re Guo*,
  965 F.3d 96 (2d Cir. 2020) ...........................................................................................4, 7-8

*In re Nickelodeon Consumer Privacy Litigation*,
 827 F.3d 262 (3d Cir. 2016) .................................................................................................7, 10

*Manza v. Pesi, Inc.*,
 No. 3:24-cv-690-jdp, 2025 WL 1445762 (W.D. Wis. May 20, 2025) ....................................10

*Robinson v. Disney Online*,
 152 F. Supp. 3d 176 (S.D.N.Y 2015) ......................................................................................10

*Salazar v. National Basketball Ass'n*,
 118 F. 4th 533 (2d Cir. 2024) ..........................................................................................5, 8, 9

*Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*,
 101 F.4th 176 (2d Cir. 2024) .....................................................................................................7

*Solomon v. Flipps Media, Inc.*,
 136 F.4th 41 (2d Cir. 2025) ............................................................................................ passim

*United States v. Afriyie*,
 27 F.4th 161 (2d Cir. 2022) .......................................................................................................4

*United States v. Fayton*,
 704 F. Supp. 3d 449 (S.D.N.Y. 2023) ..............................................................................4, 8, 10

*United States v. Robinson*,
 No. 16-CR-545 (S-4)(ADS), 2019 WL 5864135 (E.D.N.Y. Nov. 8, 2019) ........................8, 10

*Ventillo v. Falco*,
 No. 19-cv-03664 (PMH), 2020 WL 7496294 (S.D.N.Y. Dec. 18, 2020) ...........................2, 10

*Wilson v. Tiller Inc.*,
 598 F. Supp. 3d 82 (S.D.N.Y 2022) ........................................................................................10

*Yershov v. Gannett Satellite Information Network, Inc.*,
 820 F.3d 482 (1st Cir. 2016) ......................................................................................................7

**Statutes**

18 U.S.C. § 2710 ("VPPA") ...........................................................................................1, 9, 10

## INTRODUCTION

Plaintiff's Opposition (ECF No. 62, "Opp'n") concedes that binding Second Circuit precedent flatly forecloses her VPPA claim—and, in turn, her duplicative claim for unjust enrichment—but nonetheless urges the Court to issue a ruling inconsistent with that precedent. The Court should not do so.

Plaintiff does not dispute NBCUniversal Media, LLC's ("NBCU") argument that the Second Circuit's decision in *Solomon v. Flipps Media, Inc.*, 136 F.4th 41 (2d Cir. 2025), bars her claim. (*See* Memo. Supporting Mot. to Dismiss Pl.'s Fourth Am. Class Action Compl. (ECF No. 58, "Mot.")). In *Solomon*, the Second Circuit held that "personally identifiable information" ("PII") within the meaning of the Video Privacy Protection Act (18 U.S.C. § 2710, the "VPPA"), includes only information that an "ordinary person" could use to identify a specific individual and the video he or she requested or viewed. 136 F.4th at 52. The *Solomon* court also considered precisely the same kinds of Facebook pixel-based disclosures, buried in lines of computer code, that Plaintiff bases her claim on here, and concluded that such transmissions did not constitute PII under that "ordinary person" standard. *Id.* at 54. As the Second Circuit recently summed up, "*Solomon* effectively shut the door for [Facebook] Pixel-based VPPA claims." *Hughes v. Nat'l Football League*, No. 24-2656, 2025 WL 1720295, at *2 (2d Cir. June 20, 2025). Under both *Solomon* and *Hughes*, the data transmissions at issue in this case—i.e., the same Facebook pixel communications at issue in both *Solomon* and *Hughes*—are not actionable VPPA disclosures as a matter of law.

Because she cannot distinguish her case from *Solomon* on either factual or legal grounds, Plaintiff asks this Court to issue a ruling that would directly contradict *Solomon*. In support of her request, Plaintiff makes two arguments: (i) that *Solomon* "fall[s] under its own weight"

1

pursuant to a "trio" of recent Supreme Court decisions, (Opp'n at 3–4), and (ii) that *Solomon* lacks "vitality" because it is inconsistent with prior Second Circuit precedent and was recently criticized by a district court from Wisconsin, (Opp'n at 11). Both arguments fail. As to the former, the Supreme Court cases Plaintiff identifies do not articulate principles that "break a link" in *Solomon*'s reasoning; to the contrary, they address longstanding and basic principles of statutory construction that are consistent with, rather than contrary to, the Second Circuit's analysis. As to the latter argument, disagreement with a decision issued by a Second Circuit panel does not provide a district court—or even the Second Circuit itself—with leeway to ignore it. Plaintiff's dissatisfaction with the "ordinary person standard" is neither here nor there. *Solomon* is the law in this Circuit and, here, requires dismissal of Plaintiff's VPPA claim.

## ARGUMENT

### I. Plaintiff Fails to State a Claim Under the VPPA.

Plaintiff does not (and cannot) contest that her VPPA claim falls under *Solomon* or demonstrate that this Court is not bound by the Second Circuit's decision.

#### A. Plaintiff concedes that *Solomon* forecloses her claim.

In the Motion, NBCU argued that the facts underlying the VPPA claim addressed in *Solomon* are effectively identical to the facts underlying Plaintiff's VPPA claim. (Mot. at 8–14.) Thus, under *Solomon*'s "ordinary person" test, the facts alleged in the Fourth Amended Complaint (ECF No. 56, "4AC") do not plausibily allege the disclosure of statutory PII. (Mot. at 11–12 (quoting *Solomon*, 136 F.4th at 54).) Plaintiff makes no attempt to refute NBCU's argument. She therefore concedes it. *Ventillo v. Falco*, No. 19-cv-03664 (PMH), 2020 WL 7496294, at *12 (S.D.N.Y. Dec. 18, 2020) ("As Plaintiff did not respond to Defendants on this point, he 'effectively concede[d] . . . [the] argument[ ] by his failure to respond'") (internal quotations omitted); *Felske v. Hirschmann*, No. 10-cv-8899 (RMB), 2012 WL 716632, at *3

(S.D.N.Y. Mar. 1, 2012) ("A plaintiff effectively concedes a defendant's arguments by his failure to respond to them.").

Even if Plaintiff had argued that her newly-added allegations put her case beyond *Solomon*'s reach, that argument would fail in light of the Second Circuit's decision in *Hughes*. *Hughes*, like this case and like *Solomon*, "involved a plaintiff who brought a VPPA claim against a defendant that had installed the [Facebook] Pixel on its website." *Hughes*, 2025 WL 1720295, at *2. While the matter was pending on appeal, the Second Circuit issued its decision in *Solomon*. *Id.* The plaintiff argued that the case should be remanded to the district court, so that he could add allegations roughly the same as the allegations that Plaintiff added to the 4AC—i.e., allegations that the data disclosed by the defendant was displayable "as plain text," that any ordinary person could use artificial intelligence tools to "translate the code [transmitted by the Pixel] to reveal the Facebook ID and video title in plain English," and that "75% of Americans have Facebook accounts." *Compare id.* at *3 *with* 4AC ¶¶ 91-99. The Second Circuit rejected the argument, explaining that none of the *Hughes* plaintiff's proposed amendments would "support[] a VPPA claim post-*Solomon*, because the focus of the VPPA inquiry was "whether an ordinary person would be able to understand the actual underlying code communication itself." *Hughes*, 2025 WL 1720295, at *3. Because none of the plaintiff's proposed amendments affected that central inquiry, the court determined "amendment would likely be futile" and declined to remand. *Id.*

Here, for the reasons discussed in *Hughes* and in NBCU's Motion—to which Plaintiff offers no response—Plaintiff's newly-added allegations to the 4AC do not cure the core deficiency addressed in *Solomon*. As the Second Circuit explained, "*Solomon* effectively shut the door for [Facebook] Pixel-based VPPA claims." *Id.* at *2. Plaintiff brings one such Pixel-based

3

VPPA claim. In the wake of *Solomon*, her claim is simply untenable.

### B. Plaintiff identifies no basis for disregarding *Solomon*.

Unable (or at least unwilling) to explain why *Solomon* does not require dismissal, Plaintiff asks the Court to not follow binding Circuit precedent. That approach fails.

"It is a longstanding rule of our Circuit that a three-judge panel is bound by a prior panel's decision until it is overruled either by this Court sitting *en banc* or by the Supreme Court." *In Re Guo*, 965 F.3d 96, 105 (2d Cir. 2020), *as amended* (July 9, 2020) (quoting *Doscher v. Sea Port Grp. Sec., LLC*, 832 F.3d 372, 378 (2d Cir. 2016); *accord United States v. Fayton*, 704 F. Supp. 3d 449, 454 (S.D.N.Y. 2023) (citations omitted) (applying same standards to district courts). To qualify as an intervening decision that casts sufficient doubt upon a prior ruling, the Supreme Court's conclusion in a case "must have broken the link on which we premised our prior decision or undermined an assumption of that decision." *In Re Guo*, 965 F.3d at 105 (citations omitted and cleaned up). "Unless 'a subsequent decision of the Supreme Court so undermines [circuit precedent] that it will almost inevitably be overruled,' the district court must follow the circuit court's decision." *Hoeffner v. D'Amato*, 605 F. Supp. 3d 467, 481 (E.D.N.Y 2022) (quoting *Austin v. United States*, 280 F. Supp. 3d 567, 572 (S.D.N.Y. 2017)).

The Second Circuit approaches this analysis "humbly," *United States v. Afriyie,* 27 F.4th 161, 168 (2d Cir. 2022), and has stated that overruling a prior panel decision on account of intervening Supreme Court precedent "is perilous," *In re Arab Bank, PLC Alien Tort Statute Litig.*, 808 F.3d 144, 157 (2d Cir. 2015), *as amended* (Dec. 17, 2015), *aff'd sub nom. Jesner v. Arab Bank, PLC*, 584 U.S. 241 (2018). As the Second Circuit explained in *In re Arab Bank*,

> [O]ne panel's overruling of the holding of a case decided by a previous panel . . . tends, in our view, to degrade the expectation of litigants, who routinely rely on the authoritative stature of the Court's panel opinions. It also diminishes respect for the authority of three-judge panel decisions and opinions by which the overwhelming majority of our work, and that of other circuits, is accomplished.

*Id.* In light of these concerns, the Second Circuit has declined to overrule prior panel decisions even where an intervening Supreme Court decision "casts doubt on" established precedent—opting instead to "leave it to either an en banc sitting of this Court or an eventual Supreme Court review to overrule [circuit precedent] if, indeed, it is no longer viable." *Id.*

Here, Plaintiff does not come close to meeting the high bar needed for this Court to disregard the panel decision in *Solomon*. Plaintiff recommends that the Court treat *Solomon* as overruled or abrogated because of (i) three recent Supreme Court opinions and (ii) perceived inconsistencies between the Second Circuit's decisions in *Solomon* and *Salazar v. National Basketball Ass'n*, 118 F. 4th 533 (2d Cir. 2024), along with the analysis offered by an out-of-Circuit district court decision. None of these arguments provide this Court with leeway to not follow the decision set forth in *Solomon* and reaffirmed in *Hughes*.

    1. *None of the cited Supreme Court decisions "casts sufficient doubt" on Solomon to render the decision non-binding.*

Plaintiff first urges the Court to disregard *Solomon* on the basis of three recent rulings from the U.S. Supreme Court: *A. J. T. by & through A. T. v. Osseo Area Schools*, 145 S. Ct. 1647 (2025), *CC/Devas (Mauritius) Ltd. v. Antrix Corp.*, 145 S. Ct. 1572 (2025), and *Ames v. Ohio Department of Youth Services*, 145 S. Ct. 1540 (2025). That argument fails because none of these decisions "break a link" in *Solomon*'s reasoning or "undermine[s] an assumption" of the opinion. Rather, the decisions are *consistent* with the Second Circuit's analysis and, thus, do not provide grounds to cast *Solomon* aside.

The Supreme Court's rulings in *A. J. T.*, *CC/Devas*, and *Ames* address the same statutory interpretation error: a lower court's imposition of legal requirements *in addition* to what a statute's text requires. In *A. J. T.*, the Supreme Court addressed a line of Eighth Circuit cases that required certain ADA and Rehabilitation Act claimants to make a showing of "bad faith or gross

5

misjudgment" to state a claim, even though the underlying statutory text contained no such requirements. *A. J. T.*, 145 S. Ct. at 1655 ("Nothing in the text of Title II of the ADA or Section 504 of the Rehabilitation Act suggests that such claims should be subject to a distinct, more demanding analysis."). In *CC/Devas*, the Court corrected the Ninth Circuit's reading of a "minimum contacts" analysis into the FSIA's personal-jurisdiction provision, which did not provide for that inquiry. *CC/Devas*, 145 S. Ct. at 1580 ("Notably absent from § 1330(b) is any reference to 'minimum contacts.' And we decline to add in what Congress left out[.]"). In *Ames*, the Supreme Court rejected the notion that a certain Title VII plaintiffs must satisfy a "background circumstances" test as a part of the *McDonnell Douglas* framework, where that test had no reference point in Title VII itself. *Ames*, 145 S. Ct. at 1548. In each of these decisions the Supreme Court identified a tension between the tests the lower appellate courts were "bound to follow" on account of circuit precedent, on the one hand, and the text of the underlying statutes, on the other. *A. J. T.*, 145 S. Ct. at 1654 (discussing the Eighth Circuit's recognition that its test for discrimination was "without any anchor in statutory text"); *see also CC/Devas*, 145 S. Ct. at 1579 (discussing that the Ninth Circuit applied "an additional requirement" beyond the FSIA's statutory text because it was "bound by Circuit precedent") and *Ames v. Ohio Dep't of Youth Servs.*, 87 F.4th 822, 828 (6th Cir. 2023), *cert. granted*, 145 S. Ct. 118 (2024), and *vacated and remanded*, 145 S. Ct. 1540 (2025) (Kethledge, J., concurring) (joining lower appellate court's opinion but agreeing that the circuit's Title VII test had no basis in the statute's text). Distilled down, each of the cases stands for the "straightforward" proposition that a court is bound to interpret a statue by its plain text. *CC/Devas*, 145 S. Ct. at 1579.

None of the identified cases "break a link" or "undermine an assumption" in *Solomon*. To the contrary, the holdings of these cases are consistent with the Second Circuit's decision. In

*Solomon*, the Second Circuit interpreted the statutory term "personally identifiable information" to determine "what constitutes [PII] for purposes of the VPPA." *Solomon*, 136 F.4th at 47, 52. The Second Circuit did so just as the Ninth Circuit did in *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 984 (9th Cir. 2017), the Third Circuit did in *In re Nickelodeon Consumer Privacy Litigation*, 827 F.3d 262, 290 (3d Cir. 2016), and the First Circuit did in *Yershov v. Gannett Satellite Information Network, Inc.*, 820 F.3d 482, 485–86 (1st Cir. 2016). Unlike the Supreme Court cases the Opposition points to, *Solomon*'s analysis "beg[a]n with" and was at all points based on the "words of the statute," rather than on any judicially-crafted extra-statutory requirements. *Solomon*, 136 F.4th at 51. That is reflected expressly in the opinion: after acknowledging that the term "PII" was "oblique" and not "clear," *id.* at 48 (citations omitted) ("Of the VPPA's key terms, the most ink has probably been spilled over the question of what constitutes [personally identifiable information]."), the Second Circuit considered two diverging approaches that other circuits have taken to construe the term—the "reasonable foreseeability" standard and the "ordinary person" standard—and, based on the statutory text and context, chose to adopt the latter. *Id.* at 48–54.

The interpretation of an ambiguous statutory term is not at all analogous to the judicial imposition of *additional* requirements found nowhere in a statute's text. To the contrary, the trio of recent Supreme Court cases cited by Plaintiff reiterate the well-settled principle that courts should interpret statutes beginning with their plain text, which is precisely what the *Solomon* court did. *Id.* at 51 ("When interpreting a statutory provision, we begin with the words of the statute.") (quoting *Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*, 101 F.4th 176, 181 (2d Cir. 2024)). Plaintiff's collected decisions are "based on general principles of statutory construction that cast no doubt on [Second Circuit] precedent," including the decision in

7

*Solomon*. *In Re Guo*, 965 F.3d at 106. Because *Solomon* does not rely on any judicially created statutory requirements but, instead, performed an analysis of the VPPA's statutory text, the decisions the Opposition points to do not override or abrogate *Solomon.* As such, *Solomon,* remains good—and binding—law.

      2.     *Plaintiff's criticisms of* Solomon*'s analysis are inapposite to the issue of whether the decision is binding in this Circuit.*

Plaintiff next suggests that the Court can decline to follow *Solomon* because (i) in her reading, the opinion is inconsistent with *Salazar* and (ii) *Solomon*'s analysis was not followed by a district court from the Western District of Wisconsin. (Opp'n at § B.)

The suggestion is a non-starter. Neither this Court nor the Second Circuit itself is free to ignore *Solomon* "until it is overruled either by [the Second Circuit] sitting *en banc* or by the Supreme Court." *In Re Guo*, 965 F.3d at 105; *see, e.g.*, *Ark. Carpenters Health & Welfare Fund v. Bayer AG*, 604 F.3d 98, 108–10 (2d Cir. 2010) (applying a prior panel's decision while explicitly disagreeing with it and proffering "several reasons why this case might be appropriate for reexamination by our full Court"). Because neither has occurred, Plaintiff's interpretative opinion about whether *Solomon* reached the right result is an academic exercise that, for the purposes of the instant Motion, is completely beside the point. That is true even if other circuit or district courts have issued opinions critical of *Solomon* because "the Court is in no position to ignore an explicit ruling of the Second Circuit." *United States v. Robinson*, No. 16-CR-545 (S-4)(ADS), 2019 WL 5864135, at *5 (E.D.N.Y. Nov. 8, 2019); *accord Fayton*, 704 F. Supp. 3d at 455–56 ("[T]he Court 'may not choose to follow the precedent set forth by some other circuit court of appeals which conflicts with a direct ruling by the Second Circuit.'") (quoting *Christ the King Reg'l High Sch. v. Culvert*, 644 F. Supp. 1490, 1496–97 (S.D.N.Y. 1986)). As the Second Circuit agreed in *Hughes*, *Solomon* "is binding" in this Circuit. *Hughes*, 2025 WL 1720295,

at *1. That is the end of the discussion.

While there is no reason for the Court to engage with Plaintiff's wrathful effort to "bulldoze[] *Solomon* point-by-point," (Opp'n at 8), the Opposition's criticisms are unfounded. Plaintiff's primary argument is that there is a conflict between the Second Circuit's decisions in *Salazar* and *Solomon*. That is wrong. In *Solomon*, the court expressly stated that its opinion worked in tandem with *Salazar*, noting that it set out to answer a question that *Salazar* left unanswered. *Solomon*, 136 F.4th at 48, n.10 (quoting *Salazar*, 118 F.4th at 549, n.10) ("[W]e limited our holding in *Salazar* by noting that 'while there may be breathing room in the statute to explore what exactly is 'personally identifiable information'—we need not and do not explore that argument in this appeal.'"). Given this backdrop, Plaintiff's interpretative argument has no basis in either opinion. She says that the Second Circuit's decisions in *Salazar* and *Solomon* give conflictingly broad and narrow interpretations of the term "any" in Sections 2710(a)(1) (in *Salazar*) and (b)(1) (in *Solomon*), and that a broader application of the term in all instances is called for given "Congress's intended purpose." (Opp'n at 6–7.) But there is no inconsistency. The question in *Solomon* was not whether a disclosure of PII to *any* person is actionable. The question in *Solomon* was what information constitutes PII, which the court answered by concluding that the term encompasses only information that an ordinary person could use to identify a specific individual and the video she requested or viewed. *Solomon*, 136 F.4th at 52. That is, if a particular data transmission would allow an ordinary person to identify that a particular individual requested or viewed a particular video, that data would constitute PII and if a video tape service provider disclosed that data to *any* person, that disclosure would be actionable under the VPPA. *See id*. Thus, *Solomon* does not limit the breadth of the term "any" in Section 2710(b)(1) in any way whatsoever. It merely provides a "suitable framework [for

9

covered businesses] to determine what constitutes personally identifiable information." *Id.*

Plaintiff dedicates the remainder of the Opposition to blockquotes from *Manza v. Pesi, Inc.*, No. 3:24-cv-690-jdp, 2025 WL 1445762 (W.D. Wis. May 20, 2025)—which criticizes the Second, Third, and Ninth Circuits' interpretations of Section 2710(b)(3). She then buttresses those blockquotes with her own excoriating commentary in an attempt to get this Court to disavow *Solomon*. *Manza*'s analysis is flawed for all the reasons discussed by the Third Circuit in *In re Nickelodeon*, 827 F.3d at 290, the Ninth Circuit in *Eichenberger*, 876 F.3d at 985, and the Second Circuit in *Solomon*, 136 F.4th at 52, along with the other decisions previously cited by this Court, *see Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 159 (S.D.N.Y. 2023) (citing *Wilson v. Tiller Inc.*, 598 F. Supp. 3d 82, 91–92 (S.D.N.Y 2022); *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 180 (S.D.N.Y 2015)). But even if that were not the case, the Court cannot "choose to follow" an out-of-circuit district court decision that is in direct conflict with binding Circuit precedent, which *Manza* most certainly is. *Fayton*, 704 F. Supp. 3d at 455–56; *accord Robinson,* 2019 WL 5864135, at *5. Put simply, *Manza* is irrelevant here.

## II.     Plaintiff Unjust Enrichment Claim is Duplicative of Her VPPA Claim and Fails Along with It.

NBCU argued in its Motion to Dismiss that Plaintiff's unjust enrichment claim should be dismissed because it is duplicative of her VPPA claim. Mot. at 16–17. The Court made the same point. *Golden*, 688 F. Supp. 3d at 168 (dismissing unjust enrichment claim as duplicative of *Golden*'s VPPA claim). Plaintiff makes no effort to rebut this argument thus concedes that her unjust enrichment claim should be dismissed as well. *See Ventillo*, 2020 WL 7496294, at *12.

## CONCLUSION

For the above reasons and those set forth in NBCU's Motion to Dismiss, the Fourth Amended Complaint should be dismissed with prejudice.

Dated: July 17, 2025  Respectfully submitted,

By: /s/ Benjamin S. Thomassen
    Jeffrey Landis
    ZWILLGEN PLLC
    1900 M Street NW, Suite 250
    Washington, DC 20036
    Telephone: (202) 296-3585
    Facsimile: (202) 706-5298
    Email: jeff@zwillgen.com

    Benjamin S. Thomassen*
    ZWILLGEN PLLC
    One North LaSalle St. Suite 4600
    Chicago, IL 60602
    Telephone: (312) 685-2278
    Email: ben.thomassen@zwillgen.com

    *Admitted *pro hac vice*

    *Counsel for Defendant*
    NBCUNIVERSAL MEDIA, LLC

**CERTIFICATE OF COMPLIANCE WITH WORD-COUNT LIMIT**

This document complies with Rule 3(C) of the Court's Individual Rules and Practices in Civil Cases limiting the reply memorandum to 10 pages, and the word-count limitation of Local Rule 7.1(c), because, excluding the parts of the document that are exempted, this document contains 3,363 words. This certificate was prepared in reliance on the word-count function of the word-processing system (Microsoft 365) used to prepare the document.

/s/ Benjamin S. Thomassen  
Benjamin S. Thomassen